UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jesse Puckett,
    Petitioner

    vs                        Case No.     1:03cv31
                                         1:03cv76
                        (Beckwith, C.J.; Hogan, M.J.)

Tim Brunsman,
    Respondent

**REPORT AND RECOMMENDATION**

       Petitioner, an inmate currently in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed this consolidated action pro se for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asserts seven grounds for relief.[1] (Doc. 1; Case No. 1:03cv76, Doc. 1).

       This case has proceeded to final adjudication on a piecemeal basis. First, on August 9, 2004, the Court adopted a Report and Recommendation entered on September 10, 2003 to dismiss all but one of petitioner's claims for relief as time-barred under 28 U.S.C. § 2244(d) in response to a motion to dismiss filed by respondent. (*See* Docs. 11, 13, 22). Next, on May 13, 2005, the undersigned issued another Report and Recommendation to deny as waived the one remaining claim alleged in Ground One of the petition in Case No. 1:03cv76, but also to vacate in part the previous order dismissing petitioner's other claims with prejudice on procedural statute of limitations grounds. (Doc. 23). Specifically, the Court recommended that the three grounds for relief alleged in Case No. 1:03cv31 and the second ground for

---

[1]Petitioner filed two habeas corpus petitions in Case Nos. 1:03cv31 and 1:03cv76, which were consolidated at petitioner's request. (*See* Docs. 2, 4). In Case No. 1:03cv31, petitioner presents three grounds for relief; in Case No. 1:03cv76, he alleges four grounds for relief. The documents cited herein are from the case numbered 1:03cv31, unless specifically designated as a document from Case No. 1:03cv76.

relief alleged in Case No. 1:03cv76 should not be dismissed as time-barred under the authority of the Sixth Circuit's en banc decision in *Abela v. Martin,* 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc), *cert. denied,* 541 U.S. 1070 (2004), issued a month after the September 10, 2003 Report and Recommendation, which overruled prior Sixth Circuit precedents that had been relied on by the Court in reaching its initial decision. (*See* Doc. 23, pp. 8-9). The Court adopted the May 13, 2005 Report and Recommendation on June 1, 2005. (Doc. 25).

At this juncture in the proceedings, the Court's prior decisions have resulted in the dismissal with prejudice of Grounds Three and Four of the petition in Case No. 1:03cv76 on statute of limitations grounds and of Ground One of the petition in Case No. 1:03cv76 on waiver grounds. (*See* Doc. 13; Doc. 22; Doc. 23, pp. 3-5, 8; Doc. 25). This means that four claims remain for adjudication. On May 13, 2005, respondent was ordered to file a supplemental return of writ responding to the four claims that are no longer considered barred from review on statute of limitations grounds. (Doc. 24). On June 7, 2005, in response to the Court's Order, respondent filed an "Answer/Return Of Writ" with additional exhibits, as well as a copy of the transcript of the challenged state criminal trial proceedings. (Docs. 26, 27). Therefore, it appears that petitioner's remaining four claims for relief are now ripe for final ruling.

**Factual And Procedural Background**

In 1995, petitioner was convicted of murder with a firearm specification after a jury trial before the Scioto County, Ohio, Court of Common Pleas; he was sentenced to a term of imprisonment of fifteen (15) years to life for the murder offense and an additional three (3) year prison term on the firearm specification. (*See* Doc. 11, Brief, p. 2).

With the assistance of counsel, petitioner timely appealed to the Ohio Court of Appeals, Fourth Appellate District, raising claims of error that are not at issue at this point in the proceedings. On October 1, 1996, the Court of Appeals issued a Decision and Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.,* Ex. A). In its decision, the state appellate court made the

following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(2),[2] about the events leading up to petitioner's conviction:

> The events giving rise to Puckett's conviction took place at the trailer where Puckett resided with his wife Ramona, Puckett's brother Matthew, Matthew's wife Marcy, and each couple's children. Matthew and Marcy testified that they each heard Puckett say he would kill his wife on the day the murder occurred. Matthew and Marcy insisted, however, that Puckett was only joking.
>
> Marcy witnessed Puckett retrieve an object, evidently a gun, from the top of the refrigerator and saw Puckett enter the bedroom where he and Ramona had been talking. Marcy went outside of the trailer to get Matthew and then heard a "thump" from inside the trailer. Matthew also testified that he heard the noise, went into the bedroom, and saw Ramona laying on the floor with Puckett holding her, trying to stop the bleeding. Ramona suffered a gun shot to the right side of her head and subsequently died.
>
> Puckett maintained throughout the investigation that the shooting was an accident. His accounts of the details varied somewhat with respect to whether he was cleaning the gun, playing with the gun, or putting the gun in its holster. Puckett expressed concern about his wife after the shooting and wanted to be with her.
>
> The Scioto County Sheriff's Office charged Puckett with aggravated murder. At the trial, the state offered the testimony of numerous police

---

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio court's factual findings quoted herein, except to the extent he contends that two of the State's witnesses, Matthew and Marcy Puckett, recanted their trial testimony after the conclusion of the trial and appeal proceedings. As discussed *infra* pp. 12-15, petitioner's "new" recantation evidence does not entitle him to habeas corpus relief in this case. Moreover, such evidence is insufficient to demonstrate clearly and convincingly that the Ohio Court of Appeals' factual findings based in part on those witnesses' trial testimony are erroneous.

officials and detectives. Among the state's witnesses were Detective Darrell Keller, who interviewed Puckett several times, and Officer David Thoroughman, who testified that Ramona indicated to him before she died that the shooting was not accidental. The jury found Puckett guilty of murder.

(*Id.,* pp. 1-2).

On January 27, 1997, nearly four months after the Ohio Court of Appeals issued its decision on direct appeal, petitioner filed with the assistance of new counsel from the Ohio Public Defender's Office a motion for leave to file a delayed appeal to the Ohio Supreme Court. (*Id.,* Ex. B). On March 12, 1997, the Ohio Supreme Court denied the motion without opinion. (*Id.,* Ex. C).

Over a year later, on July 3, 1998, petitioner filed a pro se application for leave to file a motion for new trial in the Scioto County Common Pleas Court. (*Id.,* Ex. D). In support of the motion, petitioner submitted the affidavits of his brother and sister-in-law, Matthew and Marcy Puckett, recanting their trial testimony against him. (*Id.*). Although the state docket records do not reflect any ruling by the trial court on this motion, the motion apparently was granted given that petitioner filed a motion for new trial on October 16, 1998 and a hearing was held on the motion on October 29, 1999. (*See id.,* Exs. E-F; Ex. H, p. 3; Doc. 26, Ex. N, Tr. 2). The trial court indicated before the hearing commenced that the parties had "been here several times," but that no hearing could be held on those prior occasions because they "had trouble getting witnesses here." (Doc. 26, Ex. N, Tr. 2). It also appears from the hearing transcript that petitioner had filed a motion to appoint counsel to represent him at the hearing on his new trial motion, which was denied. (*Id.,* Tr. 4).

At the hearing, where petitioner represented himself, Matthew and Marcy Puckett and Dean Novinger, a criminal investigator for the Scioto County Prosecuting Attorney's Office, were called to testify by petitioner; William Hatfield, a special agent for the Ohio Bureau of Criminal Identification and Investigation, testified for the State. (Doc. 26, Ex. N).

On November 30, 1999, the Common Pleas Court issued a Judgment Entry overruling petitioner's motion for new trial based on its finding that "[a]fter reviewing the affidavits and the testimony of Matthew Puckett and Marc[y] Puckett," the motion was "not well taken." (Doc. 11, Ex. G).

Petitioner appealed this decision to the Ohio Court of Appeals, Fourth Appellate District. Apparently, petitioner requested that the October 1999 hearing be transcribed at the State's expense for the record on appeal. (*See id.,* Ex. H, p. 3). The Court of Appeals denied petitioner's request, but permitted him an extension of time in which to file the transcript. (*Id.*). Petitioner did not file a transcript of the hearing within the time permitted by the court. Instead, he "attached a short transcript of the October 1999 hearing that he created" to his brief on appeal. (*Id.,* p. 4). The Court of Appeals, however, refused to consider that attachment, which was not part of the trial record, on the ground that "App. R. 9(A) limits our consideration to 'original papers and exhibits thereto filed in the trial court.'" (*Id.,* p. 5).

Because the transcript of the hearing was not included in the record, the Court of Appeals considered petitioner's appeal solely on the basis of the affidavits that had been filed in the matter. (*See id.,* pp. 5-6). As the Ohio Court of Appeals found, these affidavits included Matthew and Marcy Puckett's statements submitted by petitioner, containing assertions to the effect "that they gave false testimony at . . . trial because the sheriff's office induced them to do so." (*Id.*, p. 2). In addition, the affidavits of Dean Novinger and William Hatfield, attached by the State in support of its opposition memorandum, were included in the record on appeal. (*See* Doc. 26, Ex. M). The Ohio Court of Appeals found as follows with respect to those additional affidavits:

> In their affidavits, [Novinger and Hatfield] stated that they interviewed Matthew and Marcy Puckett. In the interview, Marcy Puckett told them that she was drunk when she signed the affidavit and told the person who presented her with the affidavit that, contrary to the affidavit, she had heard Puckett threaten to kill Ramona. Marcy Puckett also told the investigators that she assumed that the affidavit would be changed to reflect this inconsistency. In the interview, Matthew Puckett said that the affidavit was true for the most part, but refused to say which parts were true and which parts were false.

(Doc. 11, Ex. H, pp. 2-3).

On appeal, petitioner asserted as assignments of error that the trial court erred to his prejudice in denying his motion for new trial and that the trial court abused its discretion when it permitted the State to "go forward[] with perjurious [sic] testimony" at trial. (Doc. 26, Ex. O). The Court of Appeals overruled these claims of error and affirmed the trial court's decision to deny petitioner's new trial motion.

5

(Doc. 11, Ex. H). In rejecting petitioner's claims of error, the court reasoned in relevant part:

> The decision to grant or deny a motion for new trial is committed to the sound discretion of the trial court. . . . We will not reverse a trial court's denial of a motion for new trial absent an abuse of discretion. . . . An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than an error in judgment. . . .
>
> ****
>
> Here, we find that the trial court did not abuse its discretion in denying Puckett's motion for a new trial. While Matthew and Marcy Puckett signed affidavits indicating that they gave false testimony at Puckett's trial [and that the sheriff's office threatened them if they would not falsely accuse petitioner, helped them with Matthew Puckett's pending criminal matters, and helped Marcy Puckett get a new apartment], their subsequent conversations with investigators, as described in the investigators' affidavits, indicate that the affidavits were, at least in part, untruthful. Given the questionable nature of Matthew and Marcy Puckett's affidavits and their changing stories, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in denying Puckett's motion. . . .

(*Id.,* pp. 4-7) (state case citations omitted).

Apparently, petitioner sought leave to appeal the Court of Appeals' decision to the Ohio Supreme Court. On September 5, 2001, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. I).

On November 26, 2002, after unsuccessfully pursuing a delayed application to reopen his appeal under Ohio R. App. P. 26(B), petitioner commenced the instant consolidated habeas corpus action. (*See* Doc. 13, pp. 4-5 & n.3; *see also* Doc. 11, Exs. J, K). In the petition filed in Case No. 1:03cv31, petitioner alleges the following grounds for relief stemming from the proceedings held on his motion for new trial, which remain pending before the Court for consideration:

6

> **Ground One:** The trial court err[]ed in refusing to app[oi]nt counsel [for the evidentiary hearing and in] not allowing the defendant to call [a] fourth witness.
>
> **Ground Two:** The trial court err[]ed in ruling [that] the motion [for new trial was] not well taken.
>
> **Ground Three:** [Petitioner's constitutional right to due process was violated] by the trial court['s] refus[al] to provide access to the evidentiary hearing transcript in question, although the appellate court ordered transmission of the record, while the defendant was on appeal from that decision. . . .

(Doc. 1, pp. 5-6). In addition, in Ground Two of the petition filed in Case No. 1:03cv76, petitioner essentially claims that the circus-like manner in which the evidentiary hearing on his new trial motion was conducted amounted to a due process violation. (Case No. 1:03cv76, Doc. 1, p. 5).

## OPINION

### Petitioner Is Not Entitled To Relief Based On His Claims Challenging The Conduct Of, And Rulings Made, In The Proceedings Held On His Motion For New Trial

In the four grounds for relief that remain pending in this case, petitioner essentially alleges that the state trial court committed errors of constitutional magnitude in the proceedings held on his post-conviction, new trial motion. In the return of writ, respondent contends that these claims are not cognizable on federal habeas corpus review "because there is no constitutional right to a new trial, and habeas relief cannot be granted for claims alleging constitutional deprivations that occurred during state collateral proceedings." (Doc. 26, Brief, p. 4). Alternatively, respondent argues that petitioner is not entitled to habeas relief based on the merits of his claims. (*Id.,* pp. 7-16).[3]

---

[3]Respondent did not assert as a defense that petitioner has waived any of his grounds for relief due to his procedural default in the state courts. Therefore, the Court will not consider such a defense. However, it is noted that a strong waiver argument could have been made with

7

As an initial matter, the Court is mindful that there is authority for holding that federal habeas jurisdiction is unavailable to obtain review of petitioner's claims. *See, e.g., Sparman v. Edwards,* 26 F. Supp.2d 450, 468 n.13 (E.D.N.Y. 1997) (and cases cited therein), *aff'd,* 154 F.3d 51 (2nd Cir. 1998) (per curiam). This position is based on the premise argued by respondent that 28 U.S.C. § 2254 only authorizes federal courts to review the constitutionality of the state criminal conviction and sentence, not infirmities in a state post-conviction proceeding. *Id.* (citing *Williams-Bey v. Trickey,* 894 F.2d 314, 317 (8th Cir.), *cert. denied,* 495 U.S. 936 (1990)); *see also Jones v. Duncan,* 162 F.Supp.2d 204, 217-18 (S.D.N.Y. 2001) (petitioner's claim that the state trial court's failure to hold an evidentiary hearing on his post-conviction "newly discovered evidence motions" violated due process was held to be "not cognizable on federal habeas review"); *cf. Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (writ of habeas corpus is not the proper means by which prisoners may challenge errors or deficiencies in state post-conviction proceedings, because the claims address collateral matters and not the underlying conviction giving rise to the prisoner's incarceration), *cert. denied,* 535 U.S. 940 (2002); *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986) (same); *Johnson v. Collins,* 145 F.3d 1331 (table), No. 96-3513, 1998 WL 228029, at **1 (6th Cir. Apr. 27, 1998) (unpublished) (same).

Some courts have held that federal courts have jurisdiction to review state court denials of new trial motions in a federal habeas proceeding. *See, e.g., Grace v. Butterworth,* 586 F.2d 878, 881 (1st Cir. 1978) (citing *Sawyer v. Mullaney,* 510 F.2d 1220, 1221 (1st Cir. 1975)). However, even these courts recognize that the "trial court possesses a 'wide degree of discretion' and that the remedy is to be 'sparingly used.'" *Id.* "The standard for determining whether or not a motion for a new trial will be granted is a matter of state law and unless there is a denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." *United States ex rel. Guillen v. DeRobertis,* 580 F. Supp. 1551, 1556 (N.D. Ill. 1984) (and cases cited therein); *see also Grace,* 586 F.2d at 879, 881; *Sawyer,* 510 F.2d at 1221; *Stevens v. Beyer,* Civ. A. No. 93-970, 1994 WL 146358, at *4 (D.N.J. Apr. 21, 1994) (unpublished); *cf. Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988).

---

respect to the claims asserted in Grounds One and Three of the petition filed in Case No. 1:03cv31 and in Ground Two of the petition filed in Case No. 1:03cv76. It appears from the record that petitioner did not raise these specific claims to the Ohio Court of Appeals when appealing the trial court's decision to deny his new trial motion. (*See* Doc. 26, Ex. O).

8

In this case, the Court concludes that petitioner's claim alleged in Ground Two of Case No. 1:03cv76 generally challenging the manner in which the hearing on his new trial motion was held, as well as petitioner's claims alleged in Grounds One and Three of Case No. 1:03cv31 specifically challenging the trial court's discretionary decisions to not allow petitioner to call a fourth witness and to deny petitioner access to the evidentiary hearing transcript for appeal purposes, are not subject to review in this federal habeas corpus proceeding. The alleged errors in judgment by the trial court on procedural issues occurring in the state post-conviction, post-appeal proceeding address collateral matters and not the underlying conviction giving rise to petitioner's challenged incarceration. *Cf. Jones,* 162 F.Supp.2d at 217-18; *see also Greer,* 264 F.3d at 681; *Kirby,* 794 F.2d at 247; *Johnson, supra,* 1998 WL 228029, at \*\*1. These decisions do not trigger any concerns about the denial of a specific constitutional right or fundamental fairness at petitioner's criminal trial.

In any event, contrary to petitioner's contention, it appears from the transcript of the hearing held on the new trial motion that the hearing was not a "circus" as petitioner contends, but rather proceeded in an orderly fashion where all parties were allowed to reasonably argue their positions and to examine and cross-examine witnesses called to testify. (Doc. 26, Ex. N). It also is clear from the record that petitioner did not request an additional, fourth witness to testify on his behalf. (*See* Doc. 26, Ex. N, Tr. 55). Indeed, it appears the trial court allowed petitioner great leeway with respect to calling witnesses and recalling them to testify further at the hearing.

The only evidence in the record to support petitioner's claim that he was denied access to the hearing transcript is a Judgment Entry by the trial court denying petitioner's request for a transcript "*at the taxpayer's expense.*" (Doc. 26, Ex. O, attachment) (emphasis added). Assuming, *arguendo,* that this ruling merely denying petitioner's request for a free copy of the transcript actually precluded petitioner from obtaining access to the transcript as he contends, petitioner has not demonstrated that the transcript was necessary for him to pursue a successful appeal in the state courts. Indeed, upon review of the transcript of the hearing, this Court concludes that to the contrary, Matthew and Marcy Puckett's testimony did not add any further information or credence to the assertions already contained in their affidavits and indeed tended to undermine some of them. (*See id.,* Tr. 9-36). In contrast, William Hatfield and Dean Novinger stood by the statements contained in their affidavits. (*See id.,* Tr. 37-43).

More troubling is petitioner's claim in Ground One of Case No. 1:03cv31 that his constitutional rights were violated when the trial court denied his motion for appointment of counsel to represent him at the hearing on his new trial motion. The Supreme Court has established that the Sixth Amendment "right to counsel attaches 'at or after the time that judicial proceedings have been initiated against'" the defendant, and "continues to apply 'at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected.'" *Kitchen v. United States,* 227 F.3d 1014, 1018 (7th Cir. 2000) (quoting *Kirby v. Illinois,* 406 U.S. 682, 688 (1972), and *Mempa v. Rhay,* 389 U.S. 128, 134 (1967)). The Supreme Court has also established that although the right to counsel extends through the criminal defendant's first appeal as of right, it does not extend to discretionary appeals or collateral review proceedings. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 755-57 (1991) (relying on *Ross v. Moffitt,* 417 U.S. 600, 616 (1974), and *Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987)).

The Supreme Court has not addressed the specific issue raised here as to whether post-trial motions for new trial should be considered a "critical stage" of the prosecution where the right to counsel attaches, or rather a collateral review proceeding where the right to counsel does not apply. Some lower courts have held such motions do constitute a critical stage of the prosecution, wherein the criminal defendant is entitled to counsel. *See, e.g., Kitchen,* 227 F.3d at 1018-19 (limiting holding, however, to motions for new trial filed before the conclusion of direct appeal proceedings); *Robinson v. Norris,* 60 F.3d 457, 459-60 (8th Cir. 1995) (holding that petitioner was denied his constitutional right to counsel when the state trial court informed him after sentencing that he could file a pro se petition for new trial if he wanted to claim ineffective assistance by his trial counsel), *cert. denied,* 517 U.S. 1115 (1996); *Menefield v. Borg,* 881 F.2d 696, 698-99 (9th Cir. 1989) (holding that trial court erred in denying the petitioner's request after his conviction for appointment of counsel to assist in preparing motion for new trial); *see also Reagan v. Norris,* 279 F.3d 651, 656 (8th Cir. 2002); *see generally Mayo v. Cockrell,* 287 F.3d 336, 339 (5th Cir.) (and supporting cases cited therein), *cert. denied,* 537 U.S. 975 (2002); *United States v. Phillips,* 974 F.Supp. 491, 497 (D.Md. 1997) (and supporting cases cited therein).

The majority of courts, however, have held that there is no constitutional right to counsel in proceedings held on new trial motions, at least in cases such as this where the motion for new trial was belatedly filed after the appeal proceedings had concluded. *See, e.g., United States v. Tajeddini,* 945 F.2d 458, 470 (1st Cir. 1991),

*cert. denied,* 505 U.S. 1211 (1992);[4] *United States v. Lee,* 513 F.2d 423, 424 (D.C. Cir.) (per curiam), *cert. denied,* 423 U.S. 916 (1975); *United States v. Birrell,* 482 F.2d 890, 892 (2nd Cir. 1973) (per curiam); *United States v. Zuno-Arce,* 25 F.Supp.2d 1087, 1096-97 (C.D. Cal. 1998); *Phillips,* 974 F.Supp. at 498; *see generally Mayo,* 287 F.3d at 339 (and supporting cases cited therein); *cf. Johnson v. United States,* 246 F.3d 655, 658-60 (6th Cir. 2001) (for purposes of determining when the statute of limitations governing 28 U.S.C. § 2255 petitions begins to run, the court held that a delayed motion for new trial under Fed. R. Crim. P. 33 "must be treated as a collateral proceeding" in part because it "is usually not part of 'any critical process leading from trial to direct appeal'" and, due to its "timing and nature," shares "identical 'finality implications and practical considerations,' with collateral attacks") (quoting *United States v. Seago,* 930 F.2d 482, 489 (6th Cir. 1991)).

A few legal scholars have taken issue with the fact that the courts tend to draw an arbitrary distinction between new trial motions belatedly filed *post*-appeal where it is consistently held that there is no right to counsel, and new trial motions filed either *pre*-appeal or before the appeal remedy has been exhausted, to which some courts have found the right to counsel attaches. *See, e.g.,* Jonathan G. Neal, *"Critical Stage": Extending the Right to Counsel to the Motion for New Trial Phase,* 45 Wm. & Mary L. Rev. 783, 806-09 (2003); 3B Charles Alan Wright & Arthur Miller, Federal Practice And Procedure: Criminal § 736 (3d ed.) ("a motion for a new trial on the ground of newly discovered evidence made after the initial appeal ha[s] failed" is "more debatable–but it is still a continuation of the criminal proceeding, and it ought to be held that appointed counsel continues to serve as such for a motion of that kind.").

Nevertheless, like the majority of courts that have considered the issue, this Court concludes that under the particular facts presented by this case, petitioner was not constitutionally entitled to have counsel appointed to represent him at the hearing held on his new trial motion. The new trial motion was filed over a year after the Ohio Supreme Court denied petitioner leave to file a delayed appeal from the Ohio Court of Appeals' direct appeal decision. The motion was based solely on the suspect recantation testimony of petitioner's brother and sister-in-law contained in affidavits signed by the two witnesses on May 27, 1998, over one and one-half years after

---

[4] This decision was later abrogated on other grounds by *Roe v. Flores-Ortega,* 528 U.S. 470 (2000).

petitioner's conviction was affirmed by the Ohio Court of Appeals. Given petitioner's familial relationship with these two individuals, the Court is hard-pressed to find why this "new" evidence was not known or available to petitioner at the time of his trial or certainly during the time before his direct appeal remedy was exhausted in the Ohio courts. Under these circumstances, the Court finds that petitioner's motion for new trial was not a "critical stage" of the prosecution, but rather constituted a collateral attack on his conviction to which the Sixth Amendment right to counsel did not attach.

Finally, with respect to petitioner's claim alleged in Ground Two of Case No. 1:03cv31 that the trial court erred as a substantive matter in denying his motion for new trial based on "newly discovered" evidence, in a non-capital case such as this, the mere existence of newly discovered evidence relevant to the guilt of the defendant does not implicate constitutional concerns, and thus does not constitute a ground for federal habeas corpus relief, absent an independent constitutional violation occurring in the underlying state criminal proceeding. *See DeRobertis,* 580 F. Supp. at 1555; *see also Herrera v. Collins,* 506 U.S. 390, 400-01 (1993);[5] *Townsend v. Sain,* 372 U.S. 293, 317 (1963); *Monroe v. Smith,* 197 F.Supp.2d 753, 763 (E.D. Mich. 2001) ("A claim of actual innocence based upon newly discovered evidence is not grounds for federal habeas relief;" a "claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding"), *aff'd,* 41 Fed.Appx. 730, 732 (6th Cir. June 21, 2002) (not published in Federal Reporter); *Moorer v. Price,* No. Civ.02-CV-71391-DT, 2003 WL 22480157, at *4 (E.D. Mich. Oct. 3, 2003) (unpublished) (same).

In *Herrera,* the Supreme Court explained:

This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the

---

[5]Three Justices concurring in the 6-3 majority opinion in *Herrera* indicated their concern about executing an individual who is actually innocent. *See Herrera,* 506 U.S. at 419-20 (O'Connor and Kennedy, JJ., concurring); *id.* at 429 (White, J., concurring). Therefore, it appears the Supreme Court in *Herrera* "left the door open a tiny crack," *Stafford v. Saffle,* 34 F.3d 1557, 1561 (10th Cir. 1994), *cert. denied,* 514 U.S. 1099 (1995), for the adjudication of freestanding actual innocence claims in capital cases, where "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and ... there [is] no state avenue open to process such a claim." *See Herrera,* 506 U.S. at 417.

> Constitution– not to correct errors of fact. . . .
>
> More recent authority construing federal habeas statutes speaks in a similar vein. "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle,* [463 U.S. 880, 887 (1983)]. The guilt or innocence determination in state criminal trials is "a decisive and portentous event." *Wainwright v. Sykes,* [433 U.S. 72, 90 (1977)]. "Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Ibid.* Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

*Herrera,* 506 U.S. at 400-01. *Cf. Hall v. Grant,* 780 F.2d 1021 (table), No. 84-1531, 1985 WL 13926 (6th Cir. Nov. 20, 1985) (unpublished) (in a pre-*Herrera* case, the Sixth Circuit relied on *Townsend* to reach the same conclusion as the Court in *Herrera*), *cert. denied,* 475 U.S. 1142 (1986); *Drake v. Francis,* 727 F.2d 990, 993-94 (11th Cir. 1984) (same in Eleventh Circuit).

    The Court recognizes that after *Herrera*, some lower federal courts have indicated habeas relief still may be available in some circumstances for freestanding claims of "actual innocence" that are based on newly discovered evidence. *See, e.g., Hazel v. United States,* 303 F.Supp.2d 753, 760 & n.10 (E.D. Va. 2004) (and cases cited therein), *appeal dismissed,* 102 Fed.Appx. 357 (4th Cir. July 14, 2004), *cert. denied,* 125 S.Ct. 1690 (2005); *see also Johnson v. Hofbauer,* 159 F.Supp.2d 582, 606 (E.D. Mich. 2001); *Moorer, supra,* 2003 WL 22480157, at *4. However, even those courts "have set an extraordinary showing of petitioner's innocence before habeas relief could be granted." *Johnson,* 159 F.Supp.2d at 606; *see also Dell v. Straub,* 194 F.Supp.2d 629, 657 (E.D. Mich. 2002). For instance, one federal district court within the Sixth Circuit indicated that to obtain habeas relief based on newly discovered evidence, petitioner must make "at least a 'truly persuasive showing of innocence'" or "the evidence must be 'so compelling' that it would violate the fundamental fairness embodied in the Due Process clause not to afford the petitioner a new trial where the new evidence could be considered." *Monroe,* 197 F.Supp.2d at 763 (quoting and relying on *White v. Keane,* 51 F.Supp.2d 495, 502-03 (S.D.N.Y. 1999), and *Alleyn v. Warden,* 878 F.Supp. 30, 31 (M.D. Pa. 1995)); *cf. Whitfield v. Bowersox,* 324 F.3d 1009, 1020 (8th Cir.) (to prevail on freestanding "actual innocence" claim, the petitioner "must show new facts unquestionably establishing his innocence"),

*vacated in part on other grounds on denial of rehearing en banc,* 343 F.3d 950 (8th Cir. 2003), *cert. denied,* 540 U.S. 1187 (2004).[6] Another court indicated that at the very least, as Justice White made explicit in his concurring opinion in *Herrera,* "a petitioner asserting actual innocence must meet the standard set forth by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 . . . (1979), namely that '[no] rational trier of fact could [find] guilt beyond a reasonable doubt,' had it been given access to the newly discovered evidence." *Hazel,* 303 F.Supp.2d at 761 (quoting *Herrera,* 506 U.S. at 401-02 (White, J., concurring)).

In this case, the "newly discovered" recantation testimony of Matthew and Marcy Puckett fails to satisfy this high hurdle. First, as respondent points out in the return of writ (*see* Doc. 26, Brief, p. 11), the new evidence from petitioner's relatives belatedly contradicting their trial testimony is suspect in itself in terms of credibility and reliability, a point that would inevitably come out on their examination by the prosecution at any new trial. *See In re Byrd,* 269 F.3d 585, 606 (6th Cir. 2001) ("Recanting affidavits and witnesses are viewed with extreme suspicion.") (quoting *United States v. Chambers,* 944 F.2d 1253, 1264 (6th Cir. 1991), *cert. denied,* 502 U.S. 1112 (1992)), *cert. denied,* 534 U.S. 1109 (2002). Also, as the Ohio Court of Appeals reasonably found, the investigators' affidavits submitted by the State in response to the Pucketts' affidavits, which were corroborated by the investigator's live testimony at the hearing on petitioner's new trial motion, further undermine the credibility to be accorded the Pucketts' recantation testimony. Finally, the Pucketts' own testimony at the evidentiary hearing was evasive and reflected more changes in their stories, casting even further doubt on the veracity of the recantation testimony contained in their affidavits.[7] It, therefore, was reasonable for the state appellate court to conclude in

---

[6]In pre-*Herrera* decisions, circuit courts similarly concluded that the "newly available evidence" must "conclusively show[] that a vital mistake ha[s] been made." *Grace,* 586 F.2d at 880 (and cases cited therein); *see also Garcia v. Powers,* 973 F.2d 684, 686 (8th Cir. 1992) (a habeas petitioner challenging the state court's denial of a motion for new trial based on newly discovered evidence must show "the evidence is of such a nature that it would probably produce an acquittal on retrial"); *Coogan v. McCaughtry,* 958 F.2d 793, 801 (7th Cir.) ("in some situations newly discovered evidence is so compelling that it would be a violation of the 'fundamental fairness embodied in the Due Process Clause' not to afford a defendant a new trial at which the evidence could be considered"), *cert. denied,* 506 U.S. 986 (1992).

[7]Specifically, Matthew Puckett testified at the hearing that he was "not sure" whether he heard petitioner say "if the bitch says one more word I'm going to shoot her." (Doc. 26, Ex. N, Tr. 10, 17-18, 20). Also, when he was specifically asked by the trial court whether his testimony

14

light of the "questionable nature of Matthew and Marcy Pucketts' affidavits and their changing stories," that the trial court did not commit reversible error in denying petitioner's motion for new trial.

To the extent petitioner argues that the Matthews' recantation testimony nullifies their version of events given at trial and that petitioner's murder conviction is now based on insufficient evidence, the Court points out that other evidence was presented at trial to establish petitioner's guilt beyond a reasonable doubt for murder. Most importantly, a police officer who responded to the scene testified that before she died, the victim indicated to him that the shooting was not an accident. (Doc. 26, Trial Tr. 319-20). Therefore, the new evidence involved here, which was effectively undermined by the State, is neither so compelling nor so persuasive as to warrant habeas corpus relief in this case.[8]

Accordingly, in sum, the Court concludes that petitioner is not entitled to habeas corpus relief based on the merits of the remaining claims alleged in Grounds One through Three of the petition filed in Case No. 1:03cv31 and in Ground Two of the petition filed in Case No. 1:03cv76, challenging both the conduct of and rulings made in the state proceedings on his new trial motion.

---

would change in a new trial, Puckett replied: "I really wouldn't know." (*Id.,* Tr. 13). Marcy Puckett also testified that she wasn't sure whether she heard petitioner say "if the bitch says one more word I'll kill her." (*Id.,* Tr. 33-34).

[8]Indeed, even under the less arduous standard set forth in *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995), for determining whether or not a procedurally-barred claim may be addressed on the merits by a federal habeas court under the "actual innocence" exception, petitioner's substantive claim must fail. Under the *Schlup* standard, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged . . . to have become available only after the trial." *Id.* In this case, the jurors reasonably could conclude that the Pucketts' new testimony contradicting their trial testimony should be accorded little, if any, credence. Moreover, when viewed in light of additional evidence presented by the State and introduced at the hearing on the new trial motion further undermining the credibility and reliability to be accorded the Pucketts' change in testimony, as well as the other evidence of guilt presented at trial, the recantation testimony is insufficient to establish that it is more likely than not that no reasonable juror would have found petitioner guilty of murder beyond a reasonable doubt if such testimony had been considered.

15

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's remaining claims for habeas corpus relief brought pursuant to 28 U.S.C. § 2254, which are alleged in Grounds One through Three of Case No. 1:03cv31 and Ground Two of Case No. 1:03cv76, be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to any of the four claims addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability also should not issue with respect to Grounds Three and Four of the petition filed in Case No. 1:03cv76, which were previously dismissed with prejudice on procedural statute of limitations grounds (*see* Docs. 13, 22, 23, 25), because under the first prong of the applicable two-part standard established in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[9] Finally, as recommended in the Report and Recommendation issued May 13, 2005 (*see* Doc. 23, pp. 9-10, ¶ 1), a certificate of appealability should not issue with respect to Ground One of the petition filed in Case No. 1:03cv76, which was previously denied with prejudice on procedural waiver grounds (*see* Docs. 23, 25); under the applicable two-part *Slack* standard, "jurists of reason" would neither find it debatable whether this Court is correct in its procedural ruling, nor find it debatable whether petitioner has stated a viable constitutional claim in that ground for relief given the Sixth Circuit's recent en banc decision in *Lopez v. Wilson,* _ F.3d _, No. 01-3875, 2005 WL 2465890 (6th Cir. Oct. 7, 2005) (to be published), in which the court concluded in overruling *White v. Schotten,* 201 F.3d 743 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), that an application for reopening of an appeal under Ohio R. App. 26(B) is a collateral post-conviction remedy rather than part of the state direct appeal and, therefore, does not implicate constitutional concerns.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a

---

[9]Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claims in Grounds Three and Four of the petition filed in Case No. 1:03cv76. *See Slack,* 529 U.S. at 484.

showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  10/27/2005                          s/Timothy S. Hogan
    cbc                                    Timothy S. Hogan
                                                    United States Magistrate Judge

J:\BRYANCC\2005 habeas orders\03-31denypet.newtrialhring.wpd

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Jesse Puckett,
        Petitioner,

                                                          Case No.    1:03cv31
    v.                                                        1:03cv76
                                                       (Beckwith, C.J.; Hogan, M.J.)

Tim Brunsman,
        Respondent.

# NOTICE

      Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

1:03cv31
1:03cv76

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Jesse Puckett<br>309433<br>CCI<br>PO Box 5500<br>Chillicothe, OH 45601 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered      ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number (Transfer from service label) | 7001 2510 0008 6348 2771 |

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540